Peter C. Prynkiewicz; AZ Bar No. 015256
pprynkiewicz@littler.com
Cory G. Walker; AZ Bar No. 027853
cgwalker@littler.com
Christopher M. Suffecool; AZ Bar No. 024276
csuffecool@littler.com
LITTLER MENDELSON, P.C.
Camelback Esplanade
2425 East Camelback Road, Suite 900
Phoenix, AZ  85016
Telephone:    602.474.3600
Facsimile:     602.957.1801

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Keith Ader and Jeffrey Cochran, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SimonMed Imaging Incorporated, an Arizona corporation, d/b/a/ SimonMed; SMI Imaging, LLC, d/b/a SimonMed; Howard John Simon, MD and Jane Doe Simon; and ABC Entities 1-20, John and Jane Does 1-20,<br><br>    Defendants. | Case No. 2:17-cv-02085-JJT<br><br>**DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| SMI Imaging, LLC,<br><br>    Counter-Plaintiff/Cross-Plaintiff,<br><br>v.<br><br>Keith Ader,<br><br>    Counter-Defendant,<br><br>Hi-Caliber, Inc.,<br><br>    Cross-Defendant. | |

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600

## I. INTRODUCTION

Plaintiffs Keith Ader and Jeffrey Cochran, both of whom formerly worked for Defendant SMI Imaging, LLC ("SMI") as Field Service Engineers ("FSEs"), have asserted five causes of action against Defendants SMI, SimonMed Imaging Incorporated, and Dr. H. John Simon in their Fourth Amended Complaint. Count I alleges that Defendants violated the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* (the "FLSA"), "by failing to properly pay overtime to Plaintiffs and those current and former employees similarly situated for those hours worked each workweek in excess of forty hours." (Pl.'s Fourth Am. Compl. ¶ 68.) John Cimino, Larry Ginsberg, and Peter Nerat ("Opt-In Plaintiffs") are former FSEs for SMI who have filed Consent to Sue forms joining this action and are also asserting unpaid overtime claims against Defendants under the FLSA. Plaintiffs contend that Defendants' alleged FLSA violations were willful thereby entitling them to a three-year limitations period on their and Opt-In Plaintiffs' unpaid overtime claims. (Pl.'s Fourth Am. Compl. ¶¶ 69-70.)

Count II asserts that Plaintiffs are entitled to treble the amount of the unpaid overtime wages they are claiming under the Arizona Wage Act, A.R.S. § 23-355. Counts III and IV contend that Defendants unlawfully retaliated against Plaintiffs Ader and Cochran under the FLSA by terminating their employment for filing this lawsuit. Count V contends that Defendants failed to pay Plaintiffs overtime compensation for work they performed for SMI in California in accordance with California Labor Code § 510.

Defendants are entitled to summary judgment on Plaintiffs' overtime claims because they have failed to produce sufficient evidence establishing the amount and extent of the overtime they allegedly performed for SMI as a matter of just and reasonable inference. Alternatively, if the Court finds that Plaintiffs have raised a genuine issue of material fact on the amount and extent of their alleged overtime, the undisputed evidence shows that any overtime compensation must be calculated at one-half of Plaintiffs' regular rate as a matter of law. In addition, Plaintiffs cannot establish a willful FLSA violation as a matter of law, which means the limitations period is two years, Dr. Simon was not an FLSA employer, and Plaintiff Cochran cannot show that he was terminated for engaging in protected activity.

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

## II.    FACTUAL BACKGROUND

SMI hired Plaintiff Ader effective September 2, 2014 at an annual salary of $80,000 and Plaintiff Cochran effective September 29, 2014 at an annual salary of $78,000. (SOF ¶¶ 19 and 21.) Peter Nerat began working for SMI effective June 12, 2015 at an annual salary of $80,000. (SOF ¶ 27.) John Cimino began working for SMI effective September 21, 2015 at an annual salary of $68,000. (SOF ¶ 23.) SMI hired Larry Ginsberg effective February 1, 2016 at an annual salary of $75,000. (SOF ¶ 25.)  All of these individuals were FSEs who were paid the same set amount each pay period regardless of the number of hours they worked during any pay period. (SOF ¶¶ 20, 22-24, 26, and 28.)

FSEs at SMI install, de-install, conduct preventive maintenance, and service and repair various types of medical imaging equipment called modalities. The modalities that FSEs service for SMI include X-rays, MRIs, CTs, PET CTs, Mammograms, Fluoroscopies, and Ultrsounds. When a modality needed service, a SimonMed site would contact modality support personnel and that person, or a supervisor, would assign a service ticket to a FSE, who would generally start their work day from home and drive to the SimonMed facility requesting service to examine, diagnose, and repair the modality at issue. FSEs have different certifications, training, experience, and skill sets, and were often given assignments based on their skill sets and areas of expertise. Plaintiff Cochran, for example, was a Siemens trained engineer who focused on servicing Siemens equipment. Plaintiff Ader, by contrast, focused on serving General Electric ("GE") equipment, particularly PET CTs.

When SMI purchased a new modality it usually came with a warranty that included coverage from the manufacturer. If there were any performance issues that arose during the warranty period, the manufacturer (*e.g.*, Siemens, GE, etc.) of the modality would send one of their engineers to diagnose and repair the modality. SMI also entered into service contracts directly with manufacturers whereby engineers from those companies would service the modalities for SMI if and when there were performance issues. Engineers from manufacturers could also perform installations, de-installations, and PMs and SMI also had the option of using a third party provider to service a modality. Consequently, the hours that

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

SMI's FSEs worked varied each week depending on the number and types of modalities that needed service, whether those modalities were covered under a service contract, the preventive maintenance that was scheduled, and whether there were any installations. Regardless of the hours that an FSE worked in any given week, however, they always received the same salary every pay period.

SMI classified its FSEs as exempt employees from the time it decided to hire their own engineers in 2014 until the spring of 2017 when it reclassified them as salary nonexempt. Before reclassifying the FSEs, SMI did not record or track their hours.

### III.   LAW AND ARGUMENT

####   A.   Summary Judgment Standards

The Court should grant Defendants' Motion if there is no genuine issue of material fact and they are entitled to judgment as a matter of law. *Matsushita Elec. Indus. v. Zenith Audio Corp.*, 475 U.S. 574, 585-87 (1986). As the Supreme Court has explained, "the substantive law will identify which facts are material . . . [and only] disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Defendants' burden at the summary judgment stage is simply to point out that Plaintiffs have failed to "make a showing sufficient to establish the existence of an element essential to [Plaintiffs'] case, and on which [Plaintiffs] will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). By contrast, Plaintiffs, the parties with the burden of proof at trial, must produce specific, admissible evidence that is sufficient for a reasonable jury to return a verdict for them on their claims to survive summary judgment. *Anderson*, 477 U.S. at 256. To carry this burden, Plaintiffs "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. Specifically, Plaintiffs must "offer concrete evidence from which a reasonable juror could return a verdict in [their] favor." *Anderson*, 477 U.S. at 256. Thus, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (citations omitted).

### B. Plaintiffs Cannot Establish The Overtime That They Allegedly Worked

An employee suing for unpaid wages must prove "that he performed work for which he was not properly compensated." *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946), *superseded by statute on other grounds*. When an employer did not keep records of the hours an employee worked because the employee was classified as exempt, however, as in this case, an employee's burden of proof is relaxed and he need not put forth "the precise extent of uncompensated work." *Carmody v. Kansas City Bd. of Police Comm'rs*, 713 F.3d 401, 406 (8th Cir.2013). Under this relaxed standard, "once the employee has shown work performed for which the employee was not compensated, and 'sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference,' the burden then shifts to the employer to produce evidence to dispute the reasonableness of the inference." *Id.*; *Hernandez v. Mendoza*, 199 Cal.App.3d 721, 727 (1988).

Plaintiffs[1] have asserted unpaid overtime claims against Defendants under the FLSA in Count I and unpaid overtime claims against Defendants under California law in Count V of their Fourth Amended Complaint. Defendants are entitled to summary judgment on both Counts because Plaintiffs cannot meet their burden of showing that they worked overtime in any particular workweek and certainly cannot show the amount and extent of overtime they claim to have worked in any given workweek as a matter of just and reasonable inference.

The Eight Circuit affirmed summary judgment for an employer in an overtime claim brought by a FSE who installed and serviced three-dimensional printers in *Holaway v. Stratasys, Inc.*, 771 F.3d 1057 (8th Cir. 2014). The similarities between Plaintiffs here and the FSE in *Holaway* are numerous: (1) they worked independently out of their homes; (2) they were on duty during the week waiting for assignments; (3) supervisors or support staff would inform them when clients needed installation or service; (4) they would travel to a client's location and install or service equipment; and (5) they did not receive any overtime compensation if when working over forty hours in any given week. *Id*. at 1058. The plaintiff

---

[1] Plaintiffs and the Opt-In Plaintiffs are collectively referred to as Plaintiffs.

in *Holaway* also offered the same evidence that Plaintiffs are offering here in support of their overtime claims. Specifically, the plaintiff testified that he worked an average of anywhere from 60 to 70 hours a week throughout his employment and based those estimates on his recollection of how long he worked. *Id*. The district court granted summary judgment finding that the plaintiff failed to put forth evidence that he worked more than forty hours a week. *Id*.

The employer in *Holaway* did not track the plaintiff's hours because FSEs were classified as exempt at the time just as the FSEs were in this case. *Id*. at 1059. Although the Eight Circuit recognized that the plaintiff was not required to show the precise extent of his uncompensated work under these circumstances, it held that he "failed to meet even the relaxed evidentiary standard because he failed to put forward any evidence of the amount and extent of his work in excess of forty hours a week for any week worked for [his employer], let alone evidence of excess hours worked every week of his employment." *Id*. Instead, the court explained that the plaintiff offered "contradictory and bare assertions" regarding the overtime hours he allegedly worked, failed to offer any evidence regarding any specific weeks in which he supposedly worked over forty hours, and "failed to provide a meaningful explanation of how he arrived at his final estimate of sixty hours a week, every week, of his employment." *Id*. at 1059-60. Given the plaintiff's "vague testimony" in support of his overtime estimates and his inability "to reference specific days and hours worked," even viewing the evidence in the light most favorable to the plaintiff, the court ruled that his evidence provided "no details which would allow a jury to determine [that he] worked beyond forty hours in any specific week of his employment." *Id*. at 1060. Consequently, the plaintiff "failed to come forward with 'sufficient evidence to show the *amount and extent* of [overtime] work' which would allow a fact-finder to find overtime hours as a matter of just and reasonable inference." *Id*. (citations and quotations omitted).

Just as in *Holaway*, Plaintiffs cannot produce any evidence showing the amount and extent of the overtime hours they allegedly worked in any week during their employment at SMI. Despite being specifically asked to identify each workweek in which they allegedly worked over 40 hours, the amount of time they supposedly worked in each such workweek,

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-5-

and the source of information for those estimates, Plaintiffs have done nothing but to provide completely unsubstantiated and speculative estimates that they worked anywhere between 15 and 40 hours of overtime each week without any explanation of how they arrived at their estimates. (SOF ¶¶ 1-18.) Indeed, Plaintiffs concede that there is no way for them to say how many hours they worked in any given week, admit that their estimates are based on their memories that they worked a lot of hours, agree that they have no documents or other evidence supporting their generalizations, and cannot identify any concrete grounds for the sweeping conclusions they have reached. (SOF ¶¶ 6-7, 9-10, 12-13, 15, and 17-18.)

Just as they were in *Holaway*, Plaintiffs' "bare assertions," "vague testimony," and unsubstantiated estimates are insufficient to survive summary judgment because they fail to provide any basis for a fact-finder to determine that they worked over forty hours in any given workweek or the number of hours they purportedly worked in any workweek as a matter of just and reasonable inference. Multiple courts have granted or upheld summary judgment when plaintiffs offer nothing more than unsupported and speculative testimony that they worked multiple hours over forty hours every week of their employment without referencing any specific workweeks or hours worked in any of those workweeks as Plaintiffs have done here. *See Carmody*, 713 F.3d at 407 (8th Cir. 2013) (affirming summary judgment noting that "unsupported estimations of the unpaid hours due are not enough"); *Ihegword v. Harris Cty. Hosp. Dist.*, 929 F. Supp. 2d 635, 668 (S.D. Tex. 2013) ("[A]n unsubstantiated and speculative estimate of uncompensated overtime does not constitute evidence sufficient to show the amount and extent of that work as a matter of just and reasonable inference."); *Golden v. World Sec. Agency, Inc.*, 884 F.Supp.2d 675, 700–01 (N.D. Ill. 2012) (granting summary judgment where employees provided spreadsheet containing numbers for overtime, but failed to provide foundational testimony to explain calculations); *Rogers v. Brauer Law Offices, PLC*, No. CV-10-1693-PHX-LOA, at *11 (D. Ariz. Feb. 9, 2012) ("Because there is . . . no evidence of the amount and extent of Plaintiff's allegedly uncompensated work, there is no just and reasonable inference that Plaintiff was uncompensated for any overtime work."); *DiSantis v. Morgan Props. Payroll Servs., Inc.*, No. 09-6153, 2010 WL 3606267, at

*13 (E.D. Pa. Sept. 16, 2010) (granting summary judgment where evidence of claimed unpaid overtime hours was "vague, conclusory, and speculative"); *Kolesnikow v. Hudson Valley Hosp. Ctr.*, 622 F. Supp. 2d 98, 118–19 (S.D.N.Y. 2009) (granting summary judgment where plaintiff failed to provide "concrete particulars" of purported unpaid overtime work); *Millington v. Morrow Cty. Bd. of Comm'rs*, No. 2:06-cv-347, 2007 WL 2908817, at *7 (S.D. Ohio Oct. 4, 2007) ("Plaintiff's bare allegations that he worked an average of five hours every week at home is insufficient to meet his burden of proof."); *Gatto v. Mortgage Specialists of Illinois, Inc.*, 442 F.Supp.2d 529, 535–36 (N.D. Ill. 2006) (finding that plaintiff's mere declaration that she worked more than forty hours per week "nearly every week" does not create genuine factual issue).

### C. Any Overtime Must Be Calculated at One-Half Plaintiffs' Regular Rate

Plaintiffs allege that they "are entitled to be paid one and one-half times their regular hourly rate of pay for each hour worked in excess of forty hours per workweek." (Pls.' Fourth Am. Compl. ¶ 66.) Contrary to Plaintiffs' claim, even if the Court eventually finds that FSEs were misclassified as exempt ***and*** that they actually worked over 40 hours during certain workweeks, any calculation of damages for unpaid overtime must be based on the "half-time method," which has been expressly endorsed by the Supreme Court, the Department of Labor ("DOL"), and every federal circuit court that has addressed this issue.

Plaintiffs accepted their positions knowing that they would be paid a set salary each pay period and actually received the same salary each pay period regardless of the hours they worked in that pay period. (SOF ¶¶ 19-28.) Opt-In Plaintiffs explicitly admitted that that they knew they would be working over forty hours a week and that they would not be paid any additional compensation for those hours when they accepted their FSE positions with SMI. (SOF ¶¶ 24, 26, and 28.)

The FLSA provides that employers must compensate an employee for all hours worked over forty in one workweek "at a rate not less than one and one-half times the [employee's] regular rate." 29 U.S.C. § 207(a)(1). The Supreme Court addressed the meaning and application of this provision to employees such as Plaintiffs who worked

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

variable hours in exchange for a fixed salary in *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942), *superseded by statute on other grounds*. The *Missel* Court first explained that the "method of finding the regular rate" in such cases requires dividing the employee's weekly salary by the number of hours actually worked during that week. *Id.* at 579–80. In determining the overtime premium to be paid in such cases, given that the employees have already received their regular rate for all hours worked, including overtime hours, the Court held that "the employee should receive overtime compensation for all hours worked beyond 40 in a given workweek at a rate not less than one-half the employee's regular rate of pay." *Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 354 (4th Cir. 2011) (citing *Missel*, 316 U.S. at 579–80).

Every circuit court that has considered this issue since *Missel* has "determined that a 50% overtime premium was appropriate in calculating unpaid overtime compensation under 29 U.S.C. § 216(b) in mistaken exemption classification cases, so long as the employer and employee had a mutual understanding that the fixed weekly salary was compensation for all hours worked each workweek and the salary provided compensation at a rate not less than the minimum wage for every hour worked." *Id.*; *Urnikis-Negro v. Am. Family Prop. Servs.*, 616 F.3d 665 (7th Cir. 2010); *Clements v. Serco, Inc.*, 530 F.3d 1224 (10th Cir. 2008); *Valeria v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135 (5th Cir. 1988). As the Seventh Circuit has explained, the *Missel* approach "treats the fixed weekly wage paid to the employee as compensation at the regular rate for all hours that the employee works in a week, including overtime hours." *Urnikis-Negro*, 616 F.3d at 675. Although the employer must still compensate an employee for overtime hours, "because he has already been compensated at the regular rate for the overtime hours by means of the fixed wage, the employer will owe him *only one-half of the regular rate* for those hours rather than time plus one-half." *Id.* (emphasis added).

Initially, courts relied more heavily on the DOL's Fluctuating Workweek ("FWW") regulation, which is forward-looking, in reaching this conclusion. *See, e.g.*, *Clements v. Serco, Inc.*, 530 F.3d 1224, 1230 (10th Cir. 2008) (affirming district court's application of

FWW method of calculating overtime in misclassification case where employees understood they would receive a fixed salary for all hours worked); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35, 39–40 (1st Cir. 1999) (affirming district court's application of 29 C.F.R. § 778.114 in misclassification case where plaintiff understood her weekly hours would fluctuate and that her fixed salary was intended to compensate her for all hours worked); *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138–39 (5th Cir. 1988) (finding that district court erred in applying time and one-half overtime calculation in misclassification case where "[t]he correct method calls for dividing the actual hours worked each workweek into the fixed salary" and "multiplying all hours over 40 in the workweek by ½ the regular rate for that workweek").[2]

More recently, however, the courts have relied primarily on the rationale of *Missel*, rather than the requirements of 29 C.F.R. § 778.114, to reach the same conclusion. *See, e.g.*, *Desmond*, 630 F.3d at 353 (affirming district court decision where "[t]he court based its decision not under 29 C.F.R. § 778.114, but rather on the logic of [*Missel*] and general principles of compensatory damages"); *Black v. SettlePou, P.C.*, 732 F.3d 492, 498 (5th Cir. 2013) (relying on "the Supreme Court's precedent in *Missel* and this Court's own precedent in *Blackmon* . . . as the appropriate basis for using the [half-time] method to calculate the overtime premiums due to the employee in misclassification cases"); *Lamonica v. Safe Hurricane Shutters, Inc.*, 711 F.3d 1299, 1311 (11th Cir. 2013) ("[U]nder *Missel*, the fluctuating workweek method may be used to calculate an employee's regular rate of pay and corresponding overtime premium for use in determining damages under the FLSA.").

For example, in *Urnikis-Negro*, the Seventh Circuit found that while "section 778.114(a) itself does not provide the authority for applying the FWW method in a

---

[2] Courts applying 29 C.F.R. § 778.114 have interpreted the clear mutual understanding requirement in misclassification cases to mean that the parties "reached a 'clear mutual understanding' that while the employee's hours may vary, his or her base salary will not" (*Clements*, 530 F.3d at 1230 (quoting *Valerio*, 173 F.3d at 40)) and have awarded the overtime premium retroactively. *See Urnikis-Negro*, 616 F.3d at 680.

misclassification case," it was nevertheless "appropriate for the district court to apply the FWW method." *Urnikis-Negro*, 616 F.3d at 666. According to the court, "[t]he authority to do so is found in the Supreme Court's decision in [*Missel*], which approved this very method of calculating of [sic] an employee's regular rate of pay and corresponding overtime premium." *Id.* The court further explained that the plaintiff, like Missel and the FSEs here, was paid a fixed weekly sum for any and all hours that she worked, routinely worked substantial amounts of overtime, and never received any premium for the overtime hours she worked. *Id.* at 681. Under these circumstances, the Supreme Court held that "the employee's regular rate of pay for a given week is calculated by dividing the fixed weekly wage by the number of hours worked in that week. The employee is then entitled to an overtime premium of one-half of that rate." *Id.* The court also noted that because *Missel's* half-time method of calculating the overtime premium "has been incorporated into section 778.114," the "result of applying that rule is correct even if, analytically, the rule itself is inapt." *Id.*

Likewise, the Fourth Circuit explained that "in [*Missel*], the Court recognized that employees and employers are free to agree to a reduced hourly wage in exchange for a fixed weekly salary," and "provided the formula to compute the overtime due an employee who was paid a fixed weekly salary intended to cover all hours worked." *Desmond*, 630 F.3d at 357. And while *Missel* "concerned the more basic question of whether overtime compensation applies to those earning more than the minimum wage," it "contains nothing to indicate why such a computation would not apply in determining unpaid overtime compensation . . . in a mistaken exemption classification case." *Id.* According to the court, "[t]raditional principles of compensatory damages bolster this conclusion," given that the only "loss suffered" by a misclassified employee would be "the 50% premium for their overtime hours." *Id.*

In addition to the unanimous conclusion of every circuit court that has considered this issue, the DOL, which is the federal agency charged with enforcing the FLSA, has expressly approved using a 50% overtime premium to calculate unpaid overtime compensation in a mistaken exemption classification case. *See* Retroactive Payment of Overtime and the

Fluctuating Workweek Method of Payment, Wage and Hour Opinion Letter, FLSA 2009-3 (Dep't of Labor Jan. 14, 2009). In response to an employer's question on how to compensate employees who had been mistakenly classified as exempt, the DOL explained that "because the fixed salary covered whatever hours the employees were called upon to work in a workweek; the employees will be paid an additional one-half their actual regular rate for each overtime hour . . .; and the employees received and accepted the salary knowing that it covered whatever hours they worked," a retroactive payment of overtime using the 50% multiplier conforms with FLSA requirements. *Id.* at 2.

The conclusion reached by the federal circuit courts and the DOL is also supported by logic and common sense because any other outcome would result in an undeserved windfall to plaintiffs. As the Tenth Circuit has explained, if employees who receive fixed salaries for all hours worked are paid one and one-half of their regular rate for overtime hours they "would receive two and one-half times the regular rate for each overtime hour worked, which is more than the one and one-half that the FLSA requires." *Chavez v. City of Albuquerque*, 630 F.3d 1300, 1313 (10th Cir. 2011).

Plaintiffs presumably will rely upon *Blotzer v. L-3 Commc'ns Corp.*, 2012 U.S. Dist. LEXIS 173126 (D. Ariz. Dec. 6, 2012), or other district court cases that have rejected the logic of *Missel* and its progeny on various policy grounds, but "the Supreme Court in *Missel* was well aware of the ways in which the FWW method of calculating straight-time pay and overtime pay reduced the amounts owed to the employee for hours worked in excess of the standard workweek," and "it adopted that method nonetheless." *Urnikis-Negro*, 616 F.3d at 684; *see also Missel*, 316 U.S. at 580 (noting that while "[i]t is true that the longer the hours the less the rate and the pay per hour," that is "not an argument . . . against this method of determining the regular rate of employment for the week in question"). Moreover, there is no evidence that Plaintiffs entered into any type of "agreement" to work a "fixed" schedule, and the undisputed evidence in this case makes clear that, throughout their employment, Plaintiffs clearly understood they would – and in fact did – receive the same base salary every pay period regardless of the hours worked in that pay period. Under these

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-11-

circumstances, *Missel* "provides the appropriate method for calculating unpaid overtime compensation," if any, and the case contains "nothing to indicate why [the half-time] computation would not apply in . . . a mistaken exemption classification case." *Desmond*, 630 F.3d at 357.

### D.  Plaintiffs Cannot Establish a Willful FLSA Violation As a Matter of Law

The standard limitations period for FLSA claims is two years. A three-year limitations period applies *only* if a plaintiff establishes willfulness. An employer can be considered to have willfully violated the FLSA *only when* it acts with actual knowledge or reckless disregard of whether its actions violate the FLSA. *See McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988).  Indeed, in explaining the willfulness standard, the Supreme Court noted that "[i]n common usage, the word 'willful' is considered synonymous with such words as 'voluntary,' 'deliberate,' and 'intentional' . . . it is generally understood to refer to conduct that is not merely negligent." *Id*. at 133. Notably, proof of a willful violation is a separate and more burdensome inquiry than merely proving a violation of the FLSA.  *See Scott v. City of N.Y.*, 592 F. Supp. 2d 475, 490 (S.D.N.Y. 2008).

Plaintiffs' evidence of willfulness consists of a DOL investigation of a supervisor in California that had nothing whatsoever to do with FSEs and a complaint from an FSE in 2016, which was appropriately escalated to SMI's Human Resources Director who testified that she would have discussed such a matter with counsel. (SOF ¶¶ 29-44.) There is no evidence that Defendants acted intentionally or with reckless disregard as to any FLSA violation and courts in the Ninth Circuit "will not presume that conduct was willful in the absence of evidence." *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir. 2003). Consequently, Defendants are entitled to summary judgment on Plaintiffs' claim of willfulness and the applicable FLSA statute of limitations is two years

Given that the appropriate limitations period is two years, the Court must dismiss Opt-In Plaintiffs Ginsberg and Nerat from this action because neither of them worked for SMI during the limitations period. Ginsberg filed his Consent to Sue on July 24, 2018, which means his two-year limitations period started on July 24, 2016, but his employment with

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

SMI ended on July 18, 2016. (SOF ¶¶ 72 and 75.) Similarly, Nerat filed his Consent to Sue on July 20, 2018, which means that his limitation period started on July 20, 2016, but he resigned from SMI effective December 4, 2015. (SOF ¶¶ 73 and 76.) Opt-In Plaintiff Cimino filed his Consent to Sue on July 24, 2018, which means that his limitation period began to run on July 24, 2016. (SOF ¶ 72.) He resigned from SMI effective October 7, 2016. (SOF ¶ 74.) Thus, Opt-In Plaintiffs Ginsberg and Nerat are not entitled to and cannot recover any overtime compensation and Plaintiff Cimino can only seek such compensation for the period between July 24, 2016 and October 7, 2016, which amounts to approximately 11 weeks.

### E.  Dr. Simon Was Not An Employer Under the FLSA

Dr. Simon is the President of Defendant SimonMed Imaging Incorporated, which is the only Member of SMI. Corporate officers like Dr. Simon cannot be held individually liable under the FLSA absent unusual circumstances not present here. To the contrary, the FLSA limits liability to an "employer." 29 U.S.C. § 216(b). The term "employer" is defined in the FLSA as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d).

As recently explained by another court in the Ninth Circuit:

> [C]ourts in this circuit and others have observed that Congress did not intend that any supervisory or managerial employee of a corporation could be held personally liable for the unpaid wages of other employees. An individual may be personally liable for FLSA violations if he or she exercises control over the nature and structure of the employment relationship. The Ninth Circuit applies a four-factor economic reality test to determine whether an employment relationship exists under the FLSA. These factors, known as the *Bonnette* factors, include whether the alleged employer (1) had the power to hire and fire employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records. The determination of whether an employment relationship exists is based upon the circumstances of the whole activity . . . .

*Buntin v. Schlumberger Tech. Corp.*, No. 3:16-cv-00073-TMB, 2016 U.S. Dist. LEXIS 177314, at *8–9 (D. Alaska Dec. 22, 2016) (internal quotations and citations omitted); *see also Boucher v. Shaw*, 572 F.3d 1087, 1091 (9th Cir. 2009); *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465 (9th Cir. 1983). When an individual does not "exercise[]

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-13-

'control over the nature and structure of the employment relationship,' or 'economic control' over the relationship," that individual is not an employer within the meaning of the FLSA, and is not subject to liability. *See Boucher*, 572 F.3d at 1091.

While no one factor is dispositive in showing control over the nature and structure of an alleged employment relationship, the factors identified by the Ninth Circuit certainly indicate the type of control that is characteristic of an employer. Further, where the indicators identified by the Ninth Circuit are not present, to nevertheless find an individual is an employer would be to render the guidance of those factors nugatory and irrelevant. As explained by the court in *Lopez*, "[i]n cases where courts have found corporate officers and board members liable as employers, the individuals had at least some degree of involvement in supervising employees, controlling work schedules, and setting wages." *Lopez v. G.A.T. Airline Ground Support, Inc.*, No. 09-cv-2268-IEG, 2010 U.S. Dist. LEXIS 73029, at *29 (S.D. Cal. July 19, 2010) (emphasis added).

The Fifth Circuit, in analyzing these factors under an economic realities test, held that, while no single factor is determinative, to find employer status without reliance on the factors to guide the analysis would be to render their guidance meaningless. *See Gray v. Powers*, 673 F.3d 352, 357 (5th Cir. 2012). The court explained the importance of a structured analysis beyond hypothetical or limited instances of employer-like control, explaining "[w]e decline to adopt a rule that would potentially impose individual liability on all shareholders, members, and officers of entities that are employers under the FLSA based on their position rather than the economic reality of their involvement in the company." *Id*. Where an individual defendant's position with a company only indicates that the person could have, hypothetically, exercised control over the realities of the working relationship, but that he did not actually do so, a finding that the individual was nevertheless an employer would contradict the congressional intent behind the FLSA.

As the court in *Solis v. Velocity Express, Inc.*, explained, the FLSA should be interpreted such that a corporate officer or managerial employee should not be considered an employer merely by virtue of the fact that he is involved, as all officers and managers are, in

1   some decisions that help to shape or fulfill the operations of the company. No. CV 09-864-
2   MO, 2010 U.S. Dist. LEXIS 137342, at *8 (D. Or. July 26, 2010). Specifically,

> Because Congress did not intend that any supervisory or managerial employee of a corporation could be held personally liable for the unpaid wages of other employees, [the court] analyze[s] the *Lambert* factors with the understanding that Congress did not intend corporate officers to be individually liable for FLSA violations absent the kind of unusual circumstances highlighted in case law.

7   *Id*. (internal citations and quotations omitted) (emphasis added).

   As stated by the First Circuit:

> If, as [plaintiff] argues, the significant factor in the personal liability determination is simply the exercise of control by a corporate officer or corporate employee over the "work situation," almost any supervisory or managerial employee of a corporation could be held personally liable for the unpaid wages of other employees and the civil penalty related thereto. We adhere to the view . . . that such an expansive application of the definition of an "employer" to a personal liability determination pursuant to the FLSA is untenable.

*Baystate Alt. Staffing, Inc. v. Herman*, 163 F.3d 668, 679 (1st Cir. 1998). The Fifth Circuit has reached a similar conclusion, stating that "[l]ike the First Circuit, we recognize that 'individuals ordinarily are shielded from personal liability when they do business in a corporate form, and . . . it should not lightly be inferred that Congress intended to disregard this shield in the context of the FLSA." *Gray*, 673 F.3d at 356 (*citing Baystate Alt. Staffing*, 163 F.3d at 677) (emphasis added).

   An individual is not an FLSA employer simply because he "could have," in some hypothetical scenario, affected the terms and conditions of a plaintiff's employment. Speculation concerning what a President, CEO, or other officer might or might not be able to do if he or she wanted to simply has no place in this inquiry. As put by the Eleventh Circuit, "unexercised authority is insufficient to establish liability as an employer" under the FLSA. *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1161 (11th Cir. 2008).

   Discovery is complete and the evidentiary record is devoid of any facts suggesting that Dr. Simon controlled the nature and structure of Plaintiffs' employment relationship with SMI. Specifically, there is no evidence that he hired or fired FSEs, set their specific

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-15-

1  wage rates, established their daily schedules or work assignments, or maintained their
2  employment records. At most, Dr. Simon had the type of limited managerial interactions or
3  hypothetical authority that courts have regularly deemed insufficient to give rise to
4  individual liability under the FLSA. Without the requisite indicia of control necessary to
5  establish individual liability, the Court must dismiss Dr. Simon from this case.

### E.  The Court Must Dismiss Plaintiff Cochran's Retaliation Claim

The FLSA prohibits employers from discharging "any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3). To establish a *prima facie* case of retaliation, Plaintiff Cochran must show that he engaged in protected activity, suffered an adverse employment action, and establish a causal connection between his protected activity and the adverse employment action. *Manatt v. Bank of Am., NA*, 339 F.3d 792, 800 (9th Cir. 2003). The Supreme Court has held that Title VII retaliation claims, which closely resemble FLSA retaliation claims, require proof that the desire to retaliate was the but-for cause of the challenged employment action. *Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S.Ct. 2517 (2013). Although the Ninth Circuit has not directly held that FLSA retaliation claims also require but-for causation, it has indicated that they do. *See Avila v. L. A. Police Dep't*, 758 F.3d 1096, 1101 n.3 (9th Cir. 2014) (declining to decide that issue); *McBurnie v. City of Prescott*, No. 11-16267, at *3 (9th Cir. 2013) ("The district court did not err in giving the jury a "but-for" causation instruction on McBurnie's FLSA retaliation claim.")

To satisfy the causal connection requirement, Plaintiff Cochran must show that the individuals who made the termination decision knew that he was involved in the lawsuit. *See Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197-98 (9th Cir. 2003); *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 797 (9th Cir. 1982). If Plaintiffs establish a *prima facie* case, the burden shifts to SMI to articulate a legitimate, nondiscriminatory reason for any adverse employment actions, but Plaintiff bears the ultimate burden of demonstrating that this reason is a pretext for unlawful retaliation. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142-43 (2000).

LITTLER MENDELSON, P.C.
A Professional Corporation
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-16-

1    Plaintiff Cochran cannot satisfy the causation requirement here because Michael
2    Bankson, who made the decision to terminate his employment, was unaware that he was
3    involved in this lawsuit. (SOF ¶¶ 64-71.) SMI also had legitimate business reasons for
4    terminating his employment. Specifically, Plaintiff Cochran demonstrated an inability and/or
5    unwillingness to perform his job functions between November 2017 and January 2018. (SOF
6    ¶¶ 47-53.) Plaintiff Cochran indicated that he understood the issues that Bankson discussed
7    with him had to be immediately corrected, was expressly warned that he could be terminated
8    if those issues were not corrected, and understood that warning. (SOF ¶¶ 54-56.) Despite this
9    acknowledgment, Bankson terminated Plaintiff Cochran's employment on February 2, 2018
10   after another incident in which he failed to follow up on and complete a job. (SOF ¶¶ 57-59.)
11   Consequently, the Court must dismiss Plaintiff Cochran's retaliation claim as a matter of law
12   because Bankson could not have terminated his employment for filing this lawsuit when he
13   was totally unaware of Plaintiff Cochran's involvement in it.

## IV.   CONCLUSION

The Court must dismiss Counts I and V of Plaintiffs' Fourth Amended Complaint because they have failed to meet their burden of establishing the amount and extent of their alleged overtime work as a matter of just and reasonable inference. Alternatively, Defendants are entitled to summary judgment on Plaintiffs' claim that any overtime compensation must be paid at one and one-half times their regular rates because the half-time method applies under the circumstances presented here as a matter of law. In addition, having failed to produce evidence from which the Court could conclude that any alleged FLSA violation, if proved, was a willful violation, Defendants are entitled to summary judgment on Plaintiff's claim that a three-year limitation period applies in this case.

Dr. Simon is entitled to summary judgment on all Plaintiffs' claims because they have failed to produce evidence from which the Court can conclude that he was an employer under the FLSA. Finally, the Court must dismiss Plaintiff Cochran's retaliation claim because he cannot show that the individual who terminated his employment knew about his protected activity or that the reasons given for his termination were a pretext for retaliation.

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ 85016
602.474.3600

-17-

DATED this 7th day of February 2020.

      *s/ Peter C. Prynkiewicz*
Peter C. Prynkiewicz
Cory G. Walker
Christopher M. Suffecool
LITTLER MENDELSON, P.C.
Attorneys for Defendants/
Counter-Plaintiff/Cross-Plaintiff

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 7th day of February 2020:

Susan Martin
Daniel Bonnett
Jennifer Kroll
Michael Licata
MARTIN & BONNETT, PLLC
4647 N. 32nd Street, Suite 185
Phoenix, AZ 85018
Attorneys for Plaintiffs

  *s/ Tisha A. Davis*
4839-5099-3076.1 096178.1002

LITTLER MENDELSON, P.C.
A PROFESSIONAL CORPORATION
Camelback Esplanade
2425 East Camelback Road
Suite 900
Phoenix, AZ  85016
602.474.3600